UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Stephen Bain,                    :
          Petitioner,            :
                                 :
     v.                          :        File No. 2:06-CV-59
                                 :
Robert Hofmann,                  :
          Respondent.            :

<u>MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u>
(Papers 4, 30, 33 and 36)

     Petitioner Stephen Bain, a Vermont inmate proceeding
*pro se*, has filed a petition for writ of habeas corpus
pursuant to 28 U.S.C. § 2254.  Bain contends that
although a court recommended in 1998 that he serve his
state sentence at a prison work camp, he was denied
access to the work camp due to a disability.  As a
result, Bain claims that he has been deprived of the good
time credits to which he is entitled, and that his
current incarceration is unlawful.  He brings his § 2254
petition citing Vermont law and the Americans with
Disabilities Act ("ADA").

     The respondent has moved for summary judgment,
arguing that even if the Vermont Department of
Corrections ("DOC") granted Bain the credits he claims
are due, he still would not be entitled to immediate
release.  The respondent also contends that Bain's claims

are time-barred, that he has failed to exhaust his administrative remedies, and that he has failed to state a claim under the ADA.  For the reasons set forth below, I recommend that the respondent's motion for summary judgment be GRANTED, and that this case be DISMISSED.

<u>Factual Background</u>

In August, 1998, Bain pleaded guilty in state court to several crimes.  He was subsequently sentenced to 1 to 10 years in prison, with a recommendation that he serve his sentence at a work camp.  Bain claims that work camp participants are eligible to earn good time credits "on a day for day basis.  This means that an inmate who successfully participates in the program will have his term of imprisonment cut in half pursuant to 28 V.S.A. § 811(d)."  (Paper 22-1 at 3).

On September 1, 1998, Bain reported to a facility in Woodstock to begin serving his sentence.  On September 10, 1998, he was transported to the Caledonia Community Work Camp.  On September 18, 1998, he was removed from the work camp because of a pre-existing back condition. Bain filed a grievance dated September 25, 1998, protesting his removal from the work camp.  On October 8,

2

1998, he received a response in which the investigating officer summarized the facts as follows:

> Mr. Bain has had multiple surgeries to his back 1986-1990 which has apparently left him in severe pain – Has been on heavy medication since 1986.  [A physician] evaluated Mr. Bain, spoke to his outside physician and the recommendation was that he could go to the work camp if he could have a "sit down job." . . .  Nothing which would further impair Mr. Bain.  We are told by the Superintendent of the work camp they have no such jobs . . . .

(Paper 22-5 at 1).  On the same grievance response, the Woodstock Superintendent wrote that "[w]e are still reviewing your situation.  There are limited numbers of 'sit-down' jobs and you may be fit for a waiting list for transfer back to the work camp.  Review your situation with your case worker."  Id.

Bain was returned to the work camp on October 21, 1998.  On December 2, 1998, he was again removed from the work camp "for his own protection" and did not return thereafter.  (Paper 4-8 at 1).  He filed another grievance on December 8, 1998.  In response to this second grievance, prison officials agreed to award him good time for the period of September 10, 1998 through December 2, 1998 based upon the fact that "[h]e did not leave the work camp through any fault of his own."  Id.

at 2.  The response also recommended that good time after
December 2, 1998 should only be awarded if the
"protection" issue was raised by prison staff rather than
by Bain himself.  As DOC employee Linda Britt wrote in
the grievance response:

> I'm not sure what the standard has been in the
> past in re: removing an inmate for their
> protection.  I would suggest that if [Bain]
> signed paperwork for protection it was his
> choice and he would not be awarded the good time
> he could have earned from the work camp from the
> date he left on 12/02/98.
>
> If in fact we moved him because we felt as staff
> that we could not protect him while at the work
> camp I suggest he be awarded the work camp good
> time.  My rational[e] is, it is our issue that
> we could not protect him, not his.

Id.  This recommendation was adopted by Superintendent
James Donnon: "I am in agreement with the recommendation.
Please award the 'work camp' good time."  Id.

It is not entirely clear from the documents whether
"protection" was a reference to Bain's physical condition
or to some other threat at the work camp.  Several years
later, however, Kevin Buckley at the Caledonia Work Camp
referenced Bain's removal as having been motivated by
medical necessity.  In an internal e-mail, Buckley stated
that Bain was inquiring about a prior arrangement with

the DOC through which he would "earn workcamp goodtime
for eternity."  Buckley rejected Bain's claim that he was
entitled to good time credits for time not spent at the
work camp.  "Workcamp good time is earned only for the
time an inmate spends [there] . . . .  It should also be
noted that DOC is under no obligation to house an inmate
at [the work camp] – it is not a right of an inmate to be
housed there.  He was not medically cleared for the
workcamp, and that is why he was removed."  (Paper 4-8 at
3).

Bain was released on furlough on April 10, 1999.  On
May 22, 2003, he was arrested for violation of his parole
and his parole was revoked on June 19, 2003.  He went to
trial in 2006, was found guilty, and was sentenced as
habitual offender to five to ten years with credit for
time served.  (Paper 22 at 2).  The new sentence is
consecutive to his previous 1 to 10 year sentence.
According to the affidavit of Ray Flum, Director of
Classification for the DOC, Bain's current effective
sentence is 5 to 20 years, with a minimum release date of
July 24, 2011 and a maximum release date of February 5,
2013.  (Paper 31 at 6).

On July 29, 2004, Bain filed a complaint for writ of habeas corpus in Windsor Superior Court. (Paper 15-2 at 1). In his complaint, Bain claimed that he was removed from the work camp for reasons related to his personal safety and was told that he would "receive full work camp good time so there would be no reason to file [a] federal law suit about work camp good time. This hasn't happened." Bain's complaint was dismissed without prejudice in an entry order dated May 2, 2005. (Paper 15-3).

On July 5, 2005, he filed a second complaint for writ of habeas corpus in Windsor Superior Court. (Paper 15-4). Bain again argued that he was entitled to work camp good time credits, although his theory was based upon the recently-enacted Act 63, "An Act Relating to Corrections." Section 2(a) of Act 63 states:

> Each individual in the custody of the commissioner of corrections who is serving a term of incarceration on July 1, 2005 shall be awarded all reductions in the minimum and maximum terms to which that inmate is entitled as of the end of the day on June 30, 2005, consistent with those provisions of 28 V.S.A. § 811 that were in force when the inmate's crime was committed.

(Paper 15-5 at 2). Bain argued that because he was

entitled to retroactive good time credits stemming from his removal from the work camp in 1998, Act 63 required those credits to be awarded.

Bain's initial complaint did not reference the ADA. In a status conference held on July 14, 2005, however, Bain stated that in addition to his Act 63 argument he wished to bring a claim under the ADA. (Paper 17-2 at 8-10). When he informed state court Judge DiMauro that his ADA claim was based upon events that occurred in 1998 and 1999, she ruled that he "had the opportunity to grieve that or file a lawsuit in the past. So we're not going to revisit that issue now because you [sic] we're basing this on new legislation." Id. at 10.

On August 25, 2005, Judge DiMauro dismissed Bain's complaint, concluding that the Vermont legislature had not intended for Act 63 to be a mechanism through which an inmate could "receive any credit that he did not earn in the past or was denied in the past." (Paper 15-5 at 2). The court further determined that if an inmate was unhappy with a Department of Corrections decision, he could exhaust his administrative remedies and ultimately proceed in state court pursuant to Vermont Rule of Civil

Procedure 75 "in a timely manner."[1]

> Petitioner here is, in effect, questioning prior
> decisions made by the Department, as long ago as
> seven years, on the basis of the enactment of
> Section 2(a) and under the guise of a request
> for habeas corpus relief.  It is clear from the
> plain language of the statute, that the
> Legislature did not intend section (a) to be
> read as awarding inmates all credit that they
> could have been entitled to prior to the statute
> being enacted.

(Paper 15-5 at 4).  Judge DiMauro's written opinion made
no specific reference to the ADA issue aside from her
suggestion that DOC decisions be challenged through
V.R.C.P. 75.

Bain appealed the lower court's ruling to the
Vermont Supreme Court.  In his multiple-page notice of
appeal, Bain identified himself as disabled under the ADA
and that he was entitled to relief under Act 63.  (Paper
15-8).  The Vermont Supreme Court dismissed Bain's appeal
as untimely.  The court's Entry Order stated, in its
entirety:

> Appellant Stephen Bain's notice of appeal was
> untimely filed and we therefore lack
> jurisdiction to consider his appeal.  Pursuant
> to V.R.A.P. 4, a notice of appeal must be filed
> within thirty days of the date of the entry of
> judgment or order appealed from.  The trial

---

[1] Rule 75 provides procedures for review of governmental action.  Time
limits are set forth at V.R.C.P. 75(c).

8

> court entered its judgment on August 25, 2005.
> Appellant filed his notice of appeal on
> September 29, 2005, more than thirty days after
> the judgment was entered.  The appeal is
> therefore dismissed.

(Paper 15-9).

Shortly after this dismissal, on October 21, 2005, Bain filed another complaint in Windsor Superior Court again seeking a writ of habeas corpus on the ground that he was entitled good time credits.  The complaint reiterated the claims he made previously, including his ADA references and his argument under Act 63.  On October 21, 2005, the court granted him 10 days to amend his complaint "to satisfy the requirements for a habeas corpus proceeding, and to explain why this case should not be dismissed on the grounds of *res judicata*."  (Paper 15-11).  On November 7, 2005, the court dismissed the petition without prejudice.  (Paper 15-12).  It does not appear that the dismissal was appealed.

Bain filed his instant habeas petition on March 16, 2006.  His petition, as amended, clearly centers on his allegation of ADA violations.  (Paper 22-1).  The respondent now moves for summary judgment arguing, *inter alia*, failure to exhaust state court remedies.

9

<u>Discussion</u>

I.  <u>Propriety of Habeas Filing</u>

"Because an action for restoration of good-time credits in effect demands immediate release or a shorter period of detention, it attacks the very duration of . . . physical confinement, and thus lies at the core of habeas corpus." <u>Wilkinson v. Dotson</u>, 544 U.S. 74, 79 (2005); <u>see also</u> <u>Preiser v. Rodriguez</u>, 411 U.S. 574, 500 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus.").  Furthermore, Courts have determined that when a claim under the Americans with Disabilities Act challenges the duration of confinement, a prisoner's sole remedy is a writ of habeas corpus.  See <u>Bogovich v. Sandoval</u>, 189 F.3d 999, 1002-03 (9th Cir. 1999); <u>Huskins v. Beard</u>, 2004 WL 2223307, at *9-*10 (E.D. Pa. Oct. 1, 2004).  Here, Bain is challenging the computation of good time, and claims that he was denied an opportunity to earn good time in violation of his rights under the ADA.

10

Accordingly, the Court has accepted his filing as a
habeas corpus petition.

The respondent contends the petition should be
denied because Bain's claims, even if meritorious, do not
entitle him to immediate release.  It is well settled,
however, that habeas relief is not limited to immediate
release.  See Wilkinson, 544 U.S. at 79 (habeas available
where petitioner seeking "immediate release or a shorter
period of detention"); Preiser, 411 U.S. at 500.
"[R]ecent cases have established that habeas corpus
relief is not limited to immediate release from illegal
custody, but that the writ is available as well to attack
future confinement and obtain future releases."  Preiser,
411 U.S. at 487.  With respect to good time claims
specifically, the Preiser court stated that if the
restoration of good time credits "merely shortened the
length of [the petitioners'] confinement, rather than
required immediate discharge from that confinement, their
suits would still have been within the core of habeas
corpus in attacking the very duration of their physical
confinement itself."  Id. at 487-88.  Thus, the
respondent's first argument does not warrant dismissal of

11

the petition.

II.   <u>Exhaustion</u>

The respondent further argues that Bain has not exhausted his state court remedies, at least with respect to the sentence imposed in 2006.   In response, Bain contends that "[t]he state court process has proven to be ineffective in resolving federal issues."   (Paper 35 at 3).   Based upon the record before the Court, and despite Bain's several attempts to secure habeas corpus relief in state court, it appears that his claims remain unexhausted.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires that before a state inmate may petition for habeas review under 28 U.S.C. § 2254, he must first exhaust all available state court remedies or, alternatively, demonstrate that "there is an absence of available State corrective process [or that] circumstances exist that render such process ineffective to protect the rights of the applicant."   28 U.S.C. § 2254(b)(1); <u>see</u> <u>also</u> <u>Fama v. Comm'r of Corr. Servs.</u>, 235 F.3d 804, 808 (2d Cir. 2000); <u>Aparicio v. Artuz</u>, 269 F.3d 78, 89 (2d Cir. 2001); <u>Ellman v. Davis</u>, 42 F.3d 144, 147

12

(2d Cir. 1994), cert. denied, 515 U.S. 1118 (1995). The exhaustion doctrine recognizes "respect for our dual judicial system and concern for harmonious relations between two adjudicatory institutions." Daye v. Attorney Gen. of New York, 696 F.2d 186, 191 (2d Cir. 1982). "Comity concerns lie at the core of the exhaustion requirement." Galdamez v. Keane, 394 F.3d 68, 72 (2d Cir. 2005).

The exhaustion requirement is satisfied only after the federal claim has been "fairly presented" to the highest court of the state involved. Fama, 235 F.3d at 808-09 (citing Picard v. Connor, 404 U.S. 270, 275 (1971)). Although both federal and state courts are charged with securing a state criminal defendant's federal rights, the state courts must initially be given the opportunity to consider and rectify any violations of federal law. Daye, 696 F.2d at 191. A claim has been "fairly presented" if the state courts are apprised of "both the factual and the legal premises of the claim [the petitioner] asserts in federal court." Id. Thus, "the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature."

13

Daye, 696 F.2d at 192; Ramirez v. Attorney Gen. of New
York, 280 F.3d 87, 94-95 (2d Cir. 2001); Morales v.
Miller, 41 F. Supp. 2d 364, 374 (E.D.N.Y. 1999).

In this case, Bain's claims were never reviewed by
the Vermont Supreme Court.  His first habeas petition was
dismissed without prejudice by the lower court and was
not appealed.  His second petition went before Judge
DiMauro, but his appeal of her decision was denied as
untimely.  The record does not show any attempt to appeal
Bain's third state court habeas petition.  Therefore, of
his three habeas corpus petitions, only one was appealed
to the Vermont Supreme Court, and none were addressed by
that court on the merits.

For exhaustion purposes, "a federal court need not
require that a federal claim be presented to a state
court if it is clear that the state court would hold the
claim procedurally barred."  Harris v. Reed, 489 U.S.
255, 263 n.9 (1989).  "In such a case, a petitioner no
longer has 'remedies available in the courts of the
State' within the meaning of 28 U.S.C. § 2254(b)."  Grey
v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991) (quoting 28
U.S.C. § 2254(b)).  Accordingly, the Court may deem such

14

a claim exhausted.  Id. at 120-21.  However, where a
claim is deemed exhausted because of a state procedural
bar, "the procedural bar that gives rise to the
exhaustion provides an independent and adequate state-law
ground for the conviction and sentence, and thus prevents
habeas corpus review of the defaulted claim."  Gray v.
Netherland, 518 U.S. 152, 162 (1996); see also Carmona v.
United States Bureau of Prisons, 243 F.3d 629, 633 (2d
Cir. 2001).

Here, Bain's appeal to the Vermont Supreme Court was
denied on the basis of Vermont's time limitation under
Rule 4 of the Vermont Rules of Appellate Procedure.  In
Coleman v. Thompson, 501 U.S. 722, 750 (1991), the U.S.
Supreme Court confirmed that a state court's denial of an
appeal as untimely constitutes an independent and
adequate state law ground for the dismissal.  As in
Coleman, the timeliness requirement here was mandatory,
was based solely upon state law grounds, and there is no
indication that the Vermont Supreme Court is at all
inconsistent about its application.  501 U.S. at 740-41.
Consequently, Bain's claims are barred from federal
habeas review unless he can show either (1) cause for

failing to properly raise the claim in state court and prejudice arising therefrom, or (2) that the failure to address the claim would result in a "fundamental miscarriage of justice." Id. at 750.

"Cause" for a procedural default is established when "some objective factor external to the defense" impeded the petitioner's efforts to comply with the state's procedural rule. Murray v. Carrier, 477 U.S. 478, 488 (1998). Bain has made no effort to show cause for his failure to bring his state court appeal in a timely manner.[2] "Prejudice" requires a petitioner to demonstrate that the alleged constitutional error worked to his "actual and substantial disadvantage." United States v. Frady, 456 U.S. 152, 170 (1982). Although Bain would surely argue prejudice, the Court notes that his arguments in state court focused primarily on Vermont's Act 63, a statute which this Court would have no

---

[2]   Although the respondent has argued lack of exhaustion, he has not claimed that Bain is procedurally barred.  While a district court may raise failure to exhaust and procedural default *sua sponte*, the Second Circuit has held that before dismissing on procedural grounds, the court must afford the petitioner notice and an opportunity to be heard.  Acosta v. Artuz, 221 F.3d 117, 124-26 (2d Cir. 2000).  Accordingly, if Bain believes that his claims have not been procedurally forfeited, or that an exception applies, he should raise these arguments in a timely-filed objection to this Report and Recommendation.  See, e.g., Garner v. Superintendent of Upstate Correctional Facility, 2007 WL 2846907, at *13 n.8 (N.D.N.Y. Sept. 26, 2007).

jurisdiction to apply.  While it is also arguable that,
although Judge DiMauro's decision did not reference the
ADA, the Vermont Supreme Court might have reached Bain's
ADA-related claim, this argument would be speculative and
does not provide sufficient grounds for a finding of
prejudice.

Finally, Bain has not shown a probability that the
failure to review his claim will result in a fundamental
miscarriage of justice.  <u>Id.</u>  This second exception to
the procedural bar is quite narrow, and is "concerned
with actual as compared to legal innocence."  <u>Sawyer v.
Whitley</u>, 505 U.S. 333, 339 (1992).  Therefore, to meet
this standard, a petitioner must show that "a
constitutional violation has probably resulted in the
conviction of one who is actually innocent."  <u>Murray v.
Carrier</u>, 477 U.S. 478, 496 (1986).

Bain is not challenging his underlying conviction.
<u>See</u> <u>Dretke v. Haley</u>, 541 U.S. 386, 393 (2004) (habeas
petitioner may claim that constitutional violation
probably resulted in conviction of one who is actually
innocent of substantive offense).  Accordingly, the
refusal to consider his petition will not result in a

17

miscarriage of justice, his default should not be excused, and his petition should be DISMISSED without prejudice for failure to exhaust state court remedies.

III.   Bain's Motion for Default Judgment

After the respondent moved for summary judgment, Bain moved for a default judgment claiming that the respondent had failed to comply with a Court order.  On March 22, 2007, the Court required the respondent to file "its answer or a motion to dismiss, or a motion for discovery and/or expansion of the record within 30 days of the date of this order."  On April 20, 2007, the respondent timely filed his motion for summary judgment. Although the filing was not an "answer or motion to dismiss," it was a dispositive motion and thus substantially complied with the Court's order.  The motion for default judgment should therefore be DENIED.

Conclusion

For the reasons set forth above, I recommend that the respondent's motion for summary judgment (Paper 30) be GRANTED and Bain's petition for a writ of habeas corpus (Paper 4) be DISMISSED without prejudice for lack of exhaustion.  I further recommend that Bain's motion

18

for default judgment (Paper 33) be DENIED.  Finally,

Bain's motion to correct (Paper 36) is DENIED as moot.

    Dated at Burlington, in the District of Vermont,

this 17ᵗʰ day of October, 2007.


                        /s/ Jerome J. Niedermeier
                        Jerome J. Niedermeier
                        United States Magistrate Judge


Any party may object to this Report and Recommendation
within 10 days after service by filing with the clerk of
the court and serving on the magistrate judge and all
parties, written objections which shall specifically
identify the portions of the proposed findings,
recommendations or report to which objection is made and
the basis for such objections.  Failure to file
objections within the specified time waives the right to
appeal the District Court's order.  See Local Rules 72.1,
72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b),
6(a) and 6(e).